*Simpson, appellees.*

---

## WM. FULLERTON'S ADMR. *v.* J. J. BOYD.

**Partnership—Dissolution—Employment of Accountant.**

Where partners concluded to dissolve the partnership and settle the partnership accounts, the employment by the firm of an accountant to balance the partnership books and correct errors therein will not authorize the making of new books and the expenditure of money in re-stating every item of account for nine years over the protest of one of the partners, and at the instance of the other, and the protesting partner can not be held liable for the cost of such extra work.

APPEAL FROM LOUISVILLE CHANCERY COURT.

December 17, 1873.

OPINION BY JUDGE PRYOR:

The partners, Clark and Fullerton, at the time they submitted, under the advice of mutual friends, their partnership books to the appellee for the correction of errors, never contemplated the immense costs that had accrued in consequence of this mode of adjustment. They were engaged in a business that certainly required a competent, if not a superior accountant; but having to dispense with any in order to economize in their undertaking, the deceased, Fullerton, without any special agreement to that effect, seems to have undertaken this part of the labor, to be performed at his leisure, after business hours, and that without any compensation. Clark knew the business capacity of Fullerton, as he had constant access to the books, but entertaining, no doubt, a false notion of economy,

like Fullerton, he was willing to save a trifling sum at the risk of losing not only their profits but the capital invested in litigation.

Ainslie & Peterson say that Boyd was authorized to place the books in proper condition, and the other to balance the accounts. It was not then intended or expected that Boyd would make out an entirely new set of books, containing the entries of the accounts and business transactions of the firm during a period of nine years. When Boyd indicated to Peterson that the cost of the work would not exceed four or five hundred dollars, Fullerton was willing to assume his portion of the liability, but after the delay on Boyd's part in correcting the books, and when it became apparent that months would be required to complete the work, and that new books would have to be made out instead of a mere correction of errors, Fullerton objected, and Clark urged that the work should go on. Boyd was not only informed of the dissatisfaction on the part of Fullerton, but was expressly notified by the latter that he would no longer continue liable. It is true that after this notice had been given, Fullerton continued now and then to give some attention to the manner in which the settlement was being made; but the whole evidence indicates that this action on his part, was more from necessity (as his partner had determined that it should be executed) than an acquiescence, even, in the creation of this large debt for the settlement of the accounts.

It clearly appears that no accountant (such was the confused condition of the accounts and books) could have made an accurate statement of the liability of the one to the other; and we can only account for the persistency of the appellee in the prosecution of his labors, when he saw that no correct statement could be made, from the fact that Clark was urging him to complete the work. He then rented rooms, hired clerks, and attempted to do that which the proof shows no accountant, however skilled, could accomplish. The balance on his new books was forced, and in many instances, errors committed that Fullerton, if competent to attend to ordinary business transactions, never would have consented to. This state of case is made manifest by the commissioner's report, and is not attempted to be refuted by the appellee. Errors were committed against appellant's intestate for many hundred dollars in these new books, and he is now called upon not only to pay half the amount of appellee's account, but the whole costs of the litigation.

It is true that from the mutilated and disfigured condition of the books as kept by Fullerton, this whole litigation originated. It was the result of a mutual effort on the part of the partners to economize, and with a knowledge on the part of both Clark and Fullerton that the latter was not competent to audit properly the accounts and business of the firm. Fullerton, for this want of skill on his part, has been made to lose the whole amount of his alleged claim for keeping the books, but ought not to have been made liable out of the partnership funds for what he never contracted to pay. The proceeds of the partnership property was under the control of the chancellor. Clark, one of the partners, had authorized the acts of Boyd, whilst Fullerton protested against being made liable for any expense incurred after his notice to Boyd that he must abandon the work. The proof is that Boyd's labor was valuable, worth greatly more than the charges made; and if so, he must look to the partner employing him and not to Fullerton.

The work may have been valuable to Clark, but not to Fullerton. The report in the cause shows that he was made liable for greatly more than his real indebtedness, and the chancellor by his commissioner, has pointed out the errors. These partners had determined on a dissolution of their partnership, and the accounts had to be settled; and a mere employment, by the firm, of an accountant to balance their books or correct errors, will not authorize the creation of new books and an expenditure of money, in restating every item and account for nine years. This may be done by contract, but not by one partner against the protest of the other, and particularly when the results of the litigation show that the benefits resulting from such a settlement are all on one side. Fullerton's administrator should have been made liable for not more than one-half of the first three months' work, the time, as was supposed by all, in which these errors could be corrected. He refused to agree to a further expenditure of money. His half of the work, including clerk hire for this firm, would not have exceeded three hundred dollars; of this sum the partnership had already made partial payment. Fullerton must be credited by one-half of these payments, and a judgment should be rendered against his administrator, to be levied of assets in his hands. For the balance each party should pay one-half the costs. There is no reason why, under the provisions of the code, a judgment may not be rendered against

Clark and Fullerton's Administrator, but in rendering the judgment against the administrator the court should direct the levy to be made on assets in the administrator's hands. For the reasons indicated the judgment is reversed and cause remanded for further proceedings consistent with this opinion.

*Bodley, Simrall, for appellant.*

*Gazlay, Remecke, for appellee.*